## In re LACOV.

(Circuit Court of Appeals, Second Circuit. December 5, 1905.)

### No. 9.

1. BANKRUPTCY—POWER OF COURT—EXPENSES OF RECEIVERSHIP.

A court of bankruptcy has authority under its general equity powers to order the petitioning creditors to pay the expenses of a receivership where the receiver was appointed on their application on the filing of their petition which was subsequently dismissed as unfounded.

2. SAME—ENFORCEMENT OF ORDER BY PROCEEDINGS FOR CONTEMPT.

A court of bankruptcy may enforce an order requiring petitioning creditors to pay the expenses of a receivership procured by them by proceedings in contempt under Bankr. Act July 1, 1898, c. 541, § 2, cl. 13, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421], at least where by the law of the state, as by Code Civ. Proc. N. Y. § 1241, imprisonment for contempt is permitted for disobedience of an order requiring the payment of money to the court, or an officer of the court.

Petition for Revision of Proceedings of the District Court of the United States for the Southern District of New York.

See 134 Fed. 237.

Arthur Furber, for petitioner.

Jacob M. Schoenfeld, for respondent.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The question presented for review is whether petitioning creditors are liable for the expenses of a receivership in a case where upon commencing a proceeding against a debtor to have him adjudicated a bankrupt they have applied to the court and obtained the appointment of a receiver of his property, and the proceeding is subsequently dismissed as unfounded; the receiver meanwhile having entered upon his duties, taken charge of the property, and incurred expenses.

There is no express provision in the bankruptcy act, which authorizes the court of bankruptcy to compel petitioning creditors to pay the costs of a receivership under such circumstances, and the power of the court must therefore rest upon its implied authority to require those to bear the expenses of a proceeding, which they have instituted without sufficient cause, and in the course of which they have invoked its assistance and asked it to put its machinery in motion for their benefit, in such a way that expenses will accrue, which must

be borne either by them or the adverse party. Courts of equity frequently exercise this power in advance of taking action, and in the absence of any statutory authority. Thus, in granting an injunction, it is common practice to require the plaintiff to give a bond or make a deposit in the registry to secure the adverse party against loss if the process be subsequently vacated. The precise question, however, has been considered frequently and determined by the courts.

In Knickerbocker v. McKindley Coal Co., 172 Ill. 535, 50 N. E. 330, 64 Am. St. Rep. 54, it was decided that where the property that comes into the possession of the court is insufficient to pay the expenses necessarily incurred by the receiver in its management, the deficiency may be taxed against the applicant for the receiver.

Couper v. Shirley, 75 Fed. 168, 21 C. C. A. 288, was an action to foreclose a mortgage in which, at the instance of the plaintiff, a receiver of the rents and profits of the mortgaged premises was appointed, and subsequently, upon the ground that the defendant was entitled to the rents and profits during the pendency of the action, the court required the receiver to pay them over, without compensation for his expenses and services, to the defendant. Upon an appeal by the receiver the Circuit Court of Appeals said:

"It may be that some provision ought to have been made for his pay, but it is clear to our minds that upon the facts presented in this case the party who improperly procured the appointment of the receiver should have been required, if the receiver was entitled to anything, to pay his expenses and services."

In Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864, a bill was filed by a judgment creditor against a national bank and its president, and it was subsequently amended to bring in certain other stockholders, and to subject them to the statutory liability as such to an amount equal to the par value of their shares. In the progress of the cause, and before the amendment to the bill, a receiver was appointed to collect the proper assets of the bank and reduce them to money; and this office he performed. The question arose whether the costs and expenses of this receivership should be borne by the defendant stockholders, who were adjudged liable to account. The court held that the fund realized from the other assets of the bank was properly charged with the expenses of its collection, but not so the fund accruing from the statutory liability of the stockholders, because the receiver was not necessary to the enforcement of that liability. The gist of the decision is thus expressed:

"Whatever costs and expenses should be paid on account of the receivership in this case, beyond any allowance made heretofore and paid, if any, should come out of the creditors at whose instance the receiver was appointed, and not out of the stockholders."

In Beach v. Macon Grocery Co., 125 Fed. 513, 60 C. C. A. 559, the Circuit Court of Appeals, in considering the question, say:

"It is a principle of general application that, if the appointment of a receiver is erroneous or void, and the adverse party does not acquiesce in it, but continues to contest it to a successful termination, any compensation, which may have accrued to the receiver in the meantime, and his expenses

incurred in the administration of the estate, should be taxed to the parties, who have applied to have the appointment made."

Weston v. Watts, 45 Hun, 219, which was a case of a receivership, is also in point. Other decisions which affirm the general doctrine are Moyers v. Coiner, 22 Fla. 422; Einstein v. Lewis, 54 Ill. App. 520; Myres v. Frankenthal, 55 Ill. App. 390; and Higley v. Deane, 64 Ill. App. 389, affirmed 168 Ill. 266, 48 N. E. 50. Upon authority, and because the principle is so just and reasonable, we adopt it and apply it to the case in hand.

As the court below had competent power to make the order directing the payment of the receiver's expenses, it also had power to enforce its lawful order by a proceeding for contempt. Bankr. Act July 1, 1898, c. 541, § 2, cl. 13, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421]. It is doubtful whether the enforcement of the contempt proceeding is equivalent to imprisonment for debt within the meaning of section 990 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 709]. Mueller v. Nugent, 184 U. S. 1, 13, 22 Sup. Ct. 269, 46 L. Ed. 405. And whether that section is not by implication repealed so far as it conflicts with the express provision to the contrary in the bankrupt act. However this may be, section 990 has no application to a case in which imprisonment for failure to obey the lawful order of the court is permitted by the laws of the state. By the law of this state (section 1241, Code Civ. Proc. N. Y.), disobedience of an order is punishable as for a contempt of the court, where it requires the payment of money to the court, or to an officer of the court. The order under review, being one requiring the payment to the receiver of the expenses incurred by him, can therefore be enforced by the usual punishment for contempt. O'Gara v. Kearney, 77 N. Y. 423, 426; Devlin v. Hinman, 161 N. Y. 115, 55 N. E. 386.

The order is affirmed, with costs.