## SMITH et al. v. AEOLIAN CO.
### Civil Action No. 1048.

District Court, D. Connecticut.

Dec. 31, 1943.

William D. Shew, of Hartford, Conn., for plaintiffs.

Curtiss K. Thompson (of Parmelee & Thompson), of New Haven, Conn., for defendant.

SMITH, District Judge.

In this action plaintiffs seek (1) a decree dissolving the defendant, a Connecticut corporation; (2) the appointment of a receiver to wind up the affairs of the defendant; (3) the distribution of the assets of the defendant to its shareholders; (4) an injunction restraining defendant and its directors from declaring or paying dividends on the common stock, using its assets and funds to purchase the preferred stock in violation of its charter, continuing the alleged manipulative and deceptive acts and practices, or taking any other steps to effectuate the conspiracy charged in the complaint.

The claims of the plaintiffs are based on the assertion that the series of transactions set forth in the complaint substantiate plaintiffs' claims that (1) the majority of the directors of the defendant are guilty of fraud, collusion, and gross mismanagement, gross abuse of trust, and failing to administer the assets and manage the business of the defendant in the best interests of the holders of its 6%, Class A, preferred stock; (2) that the assets of the defendant are in danger of waste and dissipation; (3) that the defendant has wilfully violated its charter and exceeded its powers; (4) that the defendant has abandoned its business and has neglected to wind up its affairs and distribute its assets within a reasonable·time.

From the allegations of the complaint, it appears that the defendant was formerly in the business of manufacturing automatic pianos, which business it discontinued in 1932. Since 1932, it has held the stock of another company or companies and has incidentally engaged in the business of selling pianos at retail. Its principal asset consists of 50% of the stock of American Aeolian Corporation, a manufacturing corporation which continued to manufacture pianos until required to discontinue this type of manufacture on August 1, 1942, by order of the War Production Board. As of June 30, 1943, the issued and outstanding capital stock of the defendant consisted of 14,206 shares of preferred stock, par value $50, of which 3,200 shares, comprising more than 10% of the outstanding capital stock of the defendant, are owned by the plaintiffs in this action. All of defendant's common stock, 14,430 common shares, par value $5, is owned and held by International Holding Company, except that 11 of these shares owned by International are held as qualifying shares by the directors of the defendant. International has been found insolvent, and is at present under reorganization in the U. S. District Court for the District of New Jersey. The voting power of defendant resides solely in its common stock owned and controlled by International. International owns all the common stock of Aeolian Company, Ltd., a British corporation now insolvent. International had guaranteed the preferred shares of the British corporation. The principal creditors of International in the reorganization proceedings are the preferred shareholders in the British corporation, on whose behalf Hollander & Bernheimer filed claims in excess of $1,000,000 in the proceedings for the reorganization of International. Hollander & Bernheimer thereby control International and its reorganization proceedings, and through its control of the common stock of defendant control defendant.

The complaint charges defendant's board of directors with manipulating the accounting of the defendant to conceal earnings available for the payment of dividends to the preferred shareholders while maintaining a fictitious surplus for the benefit of the common stock. The complaint likewise charges the directors of the defendant with the refusal of an offer to purchase the assets of the defendant at a price which would be sufficient to discharge the liabilities of the defendant to its creditors and preferred shareholders, in violation of the duties of the directors to the preferred shareholders.

Defendant has appeared specially for the purpose of attacking the jurisdiction of the Court. Defendant's motion to dismiss is based upon two main grounds: (1) The claim that the Court lacks jurisdiction of the subject matter of the complaint; and (2) the claim that the directors of the defendant corporation are individually indispensable parties to the action and that, since they may not be joined without destroying diversity of citizenship, the action must be dismissed.

■ Special appearance is no longer necessary. The motions will be considered as filed under Rule 12, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. See Vol. I Moore's Federal Practice 649.

It appears to be the claim of the defendant that the Court has no jurisdiction under its general equity powers to assume control over the liquidation and distribution of the assets of a Connecticut corporation which is not alleged to be insolvent, that even if such a power existed in the absence of a state statute, it would be destroyed by the Connecticut statute reserving, as it is claimed, to the state's own courts power over the liquidation and dissolution of the corporations created under the laws of the state; that no power may be derived by this Court from the Connecticut statute controlling the dissolution of Connecticut corporations, since the power granted by that statute is, by its terms, to be exercised only by the Superior Court for the county in which the corporation is located, and that the legislature could not have, even had it so attempted, enlarged the powers of a federal court of equity by virtue of such a statute.

638

Whether the Connecticut corporate dissolution statute, Gen.St.1930, § 3467 et seq., may be enforced by the federal courts is a matter of some doubt. At one time, the Circuit Court of Appeals for the Second Circuit appears to have been of the opinion that this statute could be availed of in the federal courts. See opinion of Judge Hough in O'Brien v. Lashar, 2 Cir., 1921, 274 F. 326. Later, however, in MacNamee v. Bankers' Union, 2 Cir., 1928, 25 F.2d 614, 616, Judge Swan has indicated that there may be a conflict between the view expressed in O'Brien v. Lashar and the decision in Pusey & Jones v. Hanssen, 1923, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763.

■ In general, when a state creates rights, enforceable in its own courts, they are also enforceable in the federal courts, the requisites of diversity jurisdiction being present. See the concurring opinion of Mr. Justice Douglas in Burford v. Sun Oil Co., 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1423. When, however, a state creates in its trial courts jurisdiction to review on appeal decisions of other state tribunals, it is generally held that the federal courts derive no such appellate jurisdiction from the statute even though the requisites of diversity jurisdiction are otherwise present. Burford v. Sun Oil Co., supra, 319 U.S. at page 317, 63 S.Ct. 1098, 87 L.Ed. 1423.

■ Another circumstance in which it has been held that the federal courts may not, even though the other requisites of diversity jurisdiction exist, enforce a right created by the legislature of a state and made enforceable in the courts of the state, is where the right is described as remedial rather than substantive. The Pusey & Jones case involved a grant by the Delaware legislature to the chancellor of power to appoint in his discretion a receiver for a corporation at the suit of a simple contract creditor to enforce the creditor's claim against the corporation. The court indicated that it considered this grant of discretionary power to the chancellor at the suit of a simple contract creditor the creation of a new remedy in equity which could not be held to enlarge the powers of the federal court of equity.

■ The Connecticut statute gives to the holders of 10% of the shares of stock in a corporation the right, under a showing of certain specified conditions, to the winding up and dissolution of their corporation. It is clearly a different situation from that created by the Delaware statute. The power given the chancellor in the Delaware statute to intervene in the affairs of the corporation for the protection of the debt owed the contract creditor is remedial in that the right of the creditor is to collect the money owing to him, and the new power of the chancellor is merely another tool to help him enforce that right, while the right given by the Connecticut dissolution statute is a substantive right in that, under specified circumstances, it entitles the owners of the requisite percentage of shares to the liquidation and delivery to them of a portion of the assets of the corporation, even though it be solvent, and to the winding up and dissolution of the corporation as an entity. Such a distinction may well be considered sufficient to sustain federal jurisdiction under the state statute. Perhaps it would be more accurate to say that while Pusey & Jones v. Hanssen has decided that the state may not enlarge the powers of the federal court by granting it a discretionary power to order receivership of a corporation to assist a simple contract creditor in the collection of his debt, if the state adds to the rights of shareholders against the corporation and makes them enforceable in the state courts of equity, it also permits the control of a corporation by the federal court of equity under the state statute since the intervention of equity for the protection of their existing rights against the corporation has been a tool available to shareholders prior to the statute.

■■ The powers of a federal court of equity, aside from the Connecticut statute, normally permit the protection of corporate shareholders from injustice through gross fraud or waste or dissipation of the corporate assets, through the device of seizure of the corporate assets and their administration, Burnrite Coal Co. v. Riggs, 1927, 274 U.S. 208, 212, 47 S.Ct. 578, 71 L. Ed. 1002, and where necessary (because of insolvency or abandonment of the original corporate purpose), liquidation and distribution by the court through its receiver. See Tower Hill-Connellsville Coke Co. v. Piedmont Coal Co., 4 Cir., 1933, 64 F.2d 817, 826, 827, 91 A.L.R. 648. The formal cancellation of the franchise to operate granted to the corporation by the state is not necessary in the usual case to the carrying out of the functions of receivership by the courts. The Connecticut statute allows dissolution in the same action, as added relief to the shareholders. The court's power to take over

and administer the assets of the corporation by its receiver for the protection of shareholders from loss due to fraud in the management is fairly well established. See Tower Hill-Connellsville Coke Co. v. Piedmont Coal Co., supra.

■ Where the corporation is insolvent, liquidation of its assets and distribution of the proceeds is the normal course, and the federal court has jurisdiction to administer such liquidation and distribution in a proper case through its receiver. Penn G. C. Co. v. Pennsylvania, 1935, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850. Here, however, we sometimes run into an overriding public policy which leads the courts to refrain from exercising jurisdiction, as where the state has set up administrative machinery for the orderly liquidation of financial institutions and it appears to the federal court that the interests of all parties will be better served by permitting the liquidation to be accomplished through the state agency, as in Commonwealth of Pennsylvania v. Williams, 1935, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166, and Penn G. C. Co. v. Pennsylvania, supra.

There appears to be no such public policy involved in this case. It does not appear that any better machinery exists in the agencies of the state to which the plaintiffs here have recourse, nor is any other compelling public policy brought to the attention of the Court for abandonment of its jurisdiction here.

If the right to dissolution and distribution of the assets is substantive within the meaning of the Pusey & Jones case, and if the machinery of the court is adapted to the carrying out of the method of relief granted to shareholders through the state courts by the statute, there appears to be no compelling reason for the federal court to refuse relief in an action under the statute.

The limitation of suit to the Superior Court for the county wherein the corporation is located would appear to be for the purpose of establishing the venue of such actions within the state judicial system rather than an effort to confine such actions to the state rather than the federal courts, or to set up a special tribunal with other than the historical judicial machinery for handling the problems of liquidation and dissolution. The right given by the state statute may, therefore, be enforced in the federal courts.

The motion to dismiss for lack of jurisdiction over the subject matter is denied.

Defendant's second ground of attack on the jurisdiction of the court is the claimed lack of indispensable parties.

■ Plaintiffs base their claim for relief against the defendant corporation on alleged fraud and misconduct in handling the affairs of the defendant corporation to the detriment of the corporation and of its preferred shareholders on the part of three of its directors who are alleged to dominate and control the defendant through their control over International. The three named directors, together with the other directors alleged to be their nominees, are charged with fraud, collusion, gross mismanagement, and gross abuse of trust, although none of them are made parties to this action. It would appear that complete relief by injunction against corporate actions involving waste or dissipation of assets, receivership, distribution of assets, and dissolution can be obtained by control of the defendant corporation, and that the individual directors need not be made parties to the action in order to obtain this relief. If this be so, the fact that other remedies may exist on behalf of the plaintiff, or on behalf of the corporation, against the individual directors, does not require their presence in this action solely against the corporation, which seeks relief only from the corporation and against those acting in its behalf. See Geer v. Mathieson Alkali Works, 1903, 190 U.S. 428, 23 S.Ct. 807, 47 L.Ed. 1122. No decree against the directors personally is necessary to accomplish the relief sought in the 4th prayer. Furthermore, if a cause of action exists against the directors on behalf of the corporation, the receivers, if appointed, can be authorized to enforce it by suit in a court or courts of competent jurisdiction.

Nor does it appear that the corporation in this action will not adequately represent the interests of the shareholders and directors opposed to the stand taken by the plaintiffs in this action.

The motion to dismiss for lack of jurisdiction is, in all respects, denied.